■ In the Matter of the Estate of GEORGE E. BROWER, Deceased. FRANCES FRANCABANDERA, Respondent-Appellant; ALLAN BROWER, Appellant-Respondent. [772 NYS2d 112]—

Spain, J. Cross appeals from an order of the Surrogate's Court of Delaware County (Estes, S.), entered September 23, 2003, which partially granted petitioner's motion for summary judgment.

In 1996, decedent executed a will by which he bequeathed certain real property to the children of petitioner, his stepdaughter, and otherwise essentially divided the remainder of his estate equally between petitioner, a stepson, who is petitioner's brother, and respondent, who is decedent's son. After decedent was diagnosed with cancer in September 1998, he lived primarily with petitioner who arranged for his medical care until his death approximately a year later. While living with petitioner, decedent was cared for by a professional healthcare worker during the week and by petitioner on weekends.

In early 1999, petitioner's daughter contacted an attorney who met with decedent for the purpose of revising his 1996 will. Decedent executed a new will on March 5, 1999 at the Park Ridge Rehabilitation Center in New Jersey, which increased the size of the parcel of land devised to petitioner's children, decreased his bequests to respondent and petitioner's brother and left the residuary to petitioner.

Following decedent's death in August 1999, petitioner, as executor of decedent's estate, offered the 1999 will for probate in Delaware County. Respondent filed objections, claiming improper execution, lack of testamentary capacity and that the will was obtained through fraud and undue influence. Sur-

rogate's Court granted summary judgment to petitioner with regard to the objections of fraud and undue influence, but denied petitioner's motion regarding the due execution and testamentary capacity objections. Respondent appeals and petitioner cross-appeals.

Addressing first respondent's contention on appeal, we conclude that Surrogate's Court properly granted summary judgment to petitioner on the issue of undue influence.* To establish that a will is invalid because obtained by undue influence, " '[i]t must be shown that the influence exercised amounted to a moral coercion, which restrained independent action and destroyed free agency, or which, by importunity which could not be resisted, constrained the testator to do that which was against his free will and desire, but which he was unable to refuse or too weak to resist' " (*Matter of Walther*, 6 NY2d 49, 53 [1959], quoting *Children's Aid Socy. of City of N.Y. v Loveridge*, 70 NY 387, 394-395 [1877]). Here, the will was drafted without petitioner's input by a New Jersey attorney who was not personally acquainted with petitioner. The only record evidence suggesting that anyone was taking advantage of decedent's weakening condition is that, during an interview with a hospice employee, decedent stated that he felt family members were "pulling a fast one" with regard to his finances. Inasmuch as this statement does not specifically implicate petitioner and there is a dearth of any other evidence that she took advantage of decedent in any way, "[r]espondent's contention that the will resulted from undue influence or fraud by petitioner is supported by only speculative allegations and not by evidence demonstrating triable issues" (*Matter of Minervini*, 297 AD2d 423, 424 [2002]). Thus, Surrogate's Court properly granted summary judgment to petitioner on the undue influence objection (*see id.; Matter of Sweetland*, 273 AD2d 739, 740 [2000]; *Matter of Dietrich*, 271 AD2d 894, 894 [2000]).

Turning to petitioner's arguments, we find merit in her assertion that summary judgment also should have been granted on the claim of improper execution. As Surrogate's Court accurately noted, because the 1999 will was executed in New Jersey, it is valid and admissible for probate in New York "if it is in writing and signed by the testator, and otherwise executed and attested in accordance with" the law of either New York or New Jersey (EPTL 3-5.1 [c]). New Jersey requires that "every will shall be in writing, signed by the testator . . . and shall be signed by at least two persons each of whom witnessed either

---

* On appeal, respondent has abandoned the claim that the 1999 will is the product of fraud (*see Matter of Powell v Weyant*, 307 AD2d 472, 472 n [2003]).

the signing or the testator's acknowledgment of the signature or of the will" (NJSA 3B:3-2). Thus, in contrast to New York's requirements, it is not necessary for a valid execution in New Jersey for the testator to make a declaration to the witnesses that the document being executed is his or her will or to explicitly request that they witness it (*compare* EPTL 3-2.1 [a] [2], [3], [4], *with* NJSA 3B:3-2).

Here, the will was in writing and signed by decedent. Two witnesses signed a self-proving affidavit stating that decedent declared the 1999 will to be his will and signed the will in their presence, and that decedent appeared to be competent, able to read, write and speak English, and suffered no defect that would make him unable to make a will. Both witnesses made the same statements in affidavits submitted with the probate petition. However, one of the witnesses later recanted her statements, asserting that she did not know whether decedent knew what he was signing and that he never read the will in her presence or asked her to witness it.

The fact that the witnesses did not sign the will itself, but rather a self-proving affidavit after the will, does not impact the validity of the execution under New Jersey law (*see* NJSA 3B:3-4; *see also* 38 NY Jur 2d, Decedents' Estates § 468, at 545). Further, although the recanting statements of one of the witnesses would raise an issue as to whether the will was properly executed under New York law because she has not denied that she witnessed decedent signing the will or that she signed it as a witness, her retraction does not alter the conclusion that the will was properly executed under New Jersey law (*see* NJSA 3B:3-2; *Matter of Peters*, 107 NJ 263, 273, 526 A2d 1005, 1010 [1987]). Accordingly, the will was properly executed under New Jersey law and respondent's due execution objection to the 1999 will should have been denied.

Triable issues of fact remain, however, on the issue of testamentary capacity. It is petitioner's obligation to demonstrate "that (1) [decedent] understood the nature and consequences of executing a will, (2) he knew the nature and extent of the property he was disposing of, and (3) he knew those who are the natural objects of his bounty and his relationship to them" (*Matter of Clapper*, 279 AD2d 730, 731 [2001]; *see Matter of Kumstar*, 66 NY2d 691, 692 [1985]). The attorney who drafted the document supervised the execution and opined that decedent was lucid and making a conscious choice to alter the will in petitioner's favor. Respondent also spoke to decedent about that time and admitted that decedent knew him. However, respondent asserts that only a week later decedent did not recognize

him and he submitted medical records containing evidence that, as of March 15, 1999, decedent lacked the mental capacity to execute a DNR order. We deem this evidence, accompanied by the retraction by one of the witnesses of her opinion of decedent's mental status at the time of execution, sufficient to raise an issue of fact with regard to whether decedent possessed testamentary capacity to sign a will on March 5, 1999 (*see Matter of Buchanan*, 245 AD2d 642, 645-646 [1997], *lv dismissed* 91 NY2d 957 [1998]; *Matter of Betz*, 63 AD2d 769, 769 [1978]).

Cardona, P.J., Mercure, Peters and Carpinello, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioner's motion for summary judgment dismissing the objection to the probate of decedent's will on the ground of improper execution; motion granted to that extent and said objection dismissed; and, as so modified, affirmed.