■ In the Matter of ALBERT L. FRIEDMAN, Deceased. LINDA L. FRIEDMAN et al., Appellants; KAREN A. FRIEDMAN et al., Respondents. (And Another Related Proceeding.) [809 NYS2d 667]—

Crew III, J. Appeal from an order of the Surrogate's Court of Schenectady County (Kramer, S.), entered August 30, 2005, which partially denied petitioners' cross motion for summary judgment dismissing respondents' objections to decedent's will.

Albert L. Friedman (hereinafter decedent) died in January 2003, leaving a will dated June 6, 1994. Decedent's will divided his residuary estate into two trusts; Trust A benefitted his wife and 10-year-old daughter and Trust B benefitted his three children by previous marriages, as well as his 10-year-old daughter.

Following his death, the coexecutors of decedent's estate offered the will for probate. Respondents, decedent's three children from his previous marriages, filed objections contending that the signature on the will was not decedent's, the will was not properly executed, decedent was not of sound mind at the time he executed the will and the will was procured by fraud and undue influence. Following extensive discovery, petitioners cross-moved for summary judgment dismissing the objections. After respondents withdrew their first objection, Surrogate's Court dismissed the second objection, but denied petitioners' motion as to the third and fourth objections finding that triable issues of fact existed with regard thereto. Petitioners now appeal.

It is now well established that the burden of proving that the decedent possessed the requisite testamentary capacity rests with the proponent of the will (*see Matter of Williams*, 13 AD3d 954, 955 [2004], *lv denied* 5 NY3d 705 [2005]), and the proponent must demonstrate that the decedent understood the consequences of executing the will, knew the nature and extent of the property being disposed of and knew the persons who were the natural objects of his or her bounty and his or her relationship to them (*see Matter of Brower*, 4 AD3d 586, 588 [2004]).

Here, the proponents of the will offered the testimony of Brian McCartney, the drafter of the will, who testified that prior to execution of the will, he had numerous meetings with decedent discussing the trusts and the will and that, in his opinion, decedent understood the documents. On the day that decedent

executed the will, McCartney asked decedent a number of questions to be sure that he was competent to execute the will. Additionally, McCartney and Dana Boniewski executed an affidavit as subscribing witnesses opining that decedent appeared to be of sound mind and memory to make a will. It goes without saying that such affidavit created a presumption of testamentary capacity (*see Matter of Leach*, 3 AD3d 763, 764-765 [2004]). The record further reflects that McCartney, in anticipation of a will contest, requested an opinion of Linda Ward, a licensed psychologist, as to decedent's competency to execute a will. In a March 25, 1994 letter to McCartney, Ward opined that, based upon a recent neuropsychological evaluation of decedent's cognitive functioning, decedent was capable of understanding what assets he possessed and deciding the allocation of those assets.

In opposition, respondents relied primarily on the affidavit of Pat Bergami, a longtime employee of decedent, and the affidavit and medical records of Richard Brooks, a board certified neurologist, who treated decedent for approximately 3½ years. Bergami stated that during the time that the will was being planned and executed, decedent appeared to be losing his mental abilities and business acumen, and she believed he did not have the ability to read or comprehend a complex legal document. Brooks stated that he was treating decedent for progressive dementia, a chronic, incurable and progressively worsening condition characterized by a loss of mental function in two or more areas such as language, memory, visual and spacial abilities. Of particular note, however, is Brooks's opinion that, as of mid-1994, decedent was competent, and he concurred with the opinion rendered by Ward in her March 25, 1994 letter to McCartney.

Initially, we note that the fact that decedent was diagnosed with progressive dementia does not, in and of itself, create a triable issue of fact as to his mental capacity. As we previously have observed, proof that a decedent suffered from progressive dementia when a will was executed is not necessarily inconsistent with testamentary 'capacity and does not alone preclude a finding thereof (*see Matter of Williams, supra* at 957). Here, two professionals opined that decedent was competent to sign his will, and the attesting witnesses swore that decedent appeared competent at the time he executed his will. Accordingly, we find that there exists no material question of fact in that regard.

We also are of the opinion that no question of fact exists as to the issue of undue influence. It is clear that to establish such influence, respondents must identify the claimed acts constituting the influence and the times and places when and where

such acts occurred (*see Matter of Kemble*, 149 AD2d 899, 901 [1989]). Here, respondents assert that the very magnitude of the will, coupled with decedent's declining mental health, evinces fraud in securing his signature and that, based upon his declining mental health, he may well have been unaware of his potentially disinheriting his older children. In our view, such contentions are speculative and do not rise to the specificity required to demonstrate undue influence (*see Matter of Young*, 289 AD2d 725, 727 [2001]).

Mercure, J.P., Peters, Mugglin and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as denied petitioners' motion to dismiss respondents' third and fourth objections; motion granted to that extent and said objections dismissed; and, as so modified, affirmed.