Matter of Berlin (2025 NY Slip Op 51323(U))

[*1]

Matter of Berlin

2025 NY Slip Op 51323(U)

Decided on August 22, 2025

Surrogate's Court, Putnam County

Molé, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected in part through August 28, 2025; it will not be published in the printed Official Reports.

Decided on August 22, 2025
Surrogate's Court, Putnam County

In the Matter of a Probate Proceeding, Concerning the Will of: 
 Eric S. Berlin a/k/a ERIC BERLIN, Deceased.

File No. 2022-279

The Law Firm of Daniel M. Miller, PLLC
Attorneys for Petitioner Rahael Naa Narkie
Attn: Daniel M. Miller, Esq.
704 Route 6 — Suite 21 
Mahopac, NY 10541
Email: [email protected]
Mr. Akio Berlin
Respondent-Objectant, Pro Se
Ms. Hana Berlin
Respondent-Objectant, Pro Se

Anthony R. Molé, S.

The following papers were read and considered in accordance with CPLR 2219 (a) and 22 NYCRR 207.7 on the motion of petitioner RAHAEL NAA NARKIE, made pursuant to CPLR 3212, for an order granting summary judgment dismissing the objections to probate of the last will and testament of the decedent, Eric S. Berlin a/k/a Eric Berlin, dated July 18, 2022; and upon granting summary judgment, for this Court to issue a final decree admitting the decedent's will to probate and accordingly grant letters testamentary to petitioner RAHAEL NAA NARKIE to be the estate executrix:
Papers:
• Notice of Motion; Attorney Affirmation in Support; Affirmation of Petitioner Rahael Naa Narkie; Affirmation of Esther Glassberg; Affirmation of Bert Glassberg; Exhibits A-G
• Joint Affirmation in Opposition of Respondents Akio Berlin and Hana Berlin; Exhibits [*2]A-M
• Counsel's Reply Affirmation in Further Support
• Interim Order (dated June 5, 2025)
• Surreply Memorandum of Law in Further Opposition to Summary Judgment Motion; Mis-alphabetized Exhibits; Affirmation of Akio Berlin; Affidavit of Hana Berlin
Upon review of the aforesaid papers,[FN1]
the Court finds, holds, and determines as follows:
I. Background
This contested probate proceeding presents a not-so-uncommon scenario where a niece and nephew take issue with the fact that their uncle did not bequeath any part of his estate to them in his will.
On July 18, 2022, Eric S. Berlin (hereinafter "the decedent") executed his last will and testament before two disinterested witnesses. Among other things, the will expressly nominates petitioner Rahael Naa Narkie (hereinafter referred to as "petitioner"), as the executrix of the decedent's estate, to serve without bond, wherein the decedent bequeaths his entire estate to petitioner.
The will itself consists of two pages and it includes an attestation clause containing the signatures of the decedent and the two attesting witnesses. Also annexed to the will is an unnotarized self-proving affidavit of the two attesting witnesses.
Relevant here, the decedent's will states that he "made this Will [and testament] after giving thought and consideration," that he "intentionally omitted making provisions for any or all of my heirs who are not specifically mentioned and included herein," and that he "specifically disinherit[s] each, any or all persons whoever claims to be or who may lawfully be determined to be my heirs at law." Decedent died on September 5, 2022, less than two months after he made the will.
Following the decedent's death, petitioner commenced this proceeding in October of 2022 to admit the will to probate. In March of 2023, Akio Berlin and Hana Berlin, the decedent's niece and nephew (hereinafter collectively referred to as the "the objectants") — through counsel —filed objections to probate. Their written objections assert various claims challenging the validity of the will, including lack of testamentary capacity, fraud, duress, and undue influence. Petitioner was issued preliminary letters testamentary which were subsequently extended (see SCPA 1412). 
After discovery was completed,[FN2]
petitioner, on January 24, 2025, filed a motion for summary judgment to dismiss the objections to probate, admit the will, and grant her letters [*3]testamentary. The objectants, now pro se,[FN3]
filed opposition papers contesting the motion on May 16, 2025. Reply papers, in turn, were filed by petitioner on May 23, 2025.
By Interim Order dated June 5, 2025 — which is incorporated by reference herein — the Court granted the objectants leave to file surreply papers in connection with petitioner's motion for summary judgment (see CPLR 2214 [c]; see also U.S. Bank Trust, N.A. v Rudick, 156 AD3d 841, 842 [2d Dept 2017]). The objectants filed their surreply papers on June 27, 2025. The motion is thus fully submitted and ripe for determination.
The Court has reviewed the record, as well as the motion papers submitted in connection therewith. It has considered the various arguments and claims asserted therein. The Court disposes of the motion as follows.
II. Discussion & Analysis
A. Legal Standard
"In a contested probate proceeding, summary judgment is appropriate where a petitioner establishes a prima facie case for probate and the objectant[s] fails to raise a triable issue of fact concerning the viability of the will" (Matter of Schmidt, 194 AD3d 723, 724 [2d Dept 2021]). "The proponent of a will has the burden of proving that the propounded instrument was duly executed in conformance with the statutory requirements. Where the will is drafted by an attorney and the drafting attorney supervises the will's execution, there is a presumption of regularity that the will was properly executed in all respects" (id. [internal citations omitted]; see EPTL 3-2.1 [a]; Matter of Kumstar, 66 NY2d 691, 692 [1985]).
B. The Parties' Contentions
Petitioner's main contention that she is entitled to summary judgment dismissing the objections to probate based on due execution of the will and the decedent's testamentary capacity at the time the will was made and signed in July of 2022. In addition, petitioner argues that the objectants have failed to satisfy their burden of proving any fraud, duress, and undue influence in the making of the will.
Petitioner stresses that her evidentiary submissions on this motion evince that the will was executed with the necessary formalities, that the decedent possessed the requisite mental capacity at the time he executed his will, that he was of sound mind at the time, that no undue influence or duress had been exerted upon him in any way by petitioner, and that no fraud had been committed in its making and execution. In advancing her arguments, petitioner contends that the objectants fail to submit any relevant proof in admissible form beyond their conclusory allegations and speculations. For these reasons, petitioner claims that she be awarded summary judgment dismissing all of the objections to probate (and the decedent's will be admitted to [*4]probate). 
In opposition, the objectants counter that the decedent suffered a "medical emergency" on the day that he formalized his will. In advancing this argument, the objectants claim that the decedent lacked testamentary capacity at the time of the will's execution, inasmuch as he allegedly suffered a "syncopal episode, atrial flutter, and cardioversion" that was "likely caused by cerebral hypoperfusion," thus "impairing [his] cognition." According to the objectants, the decedent was not of sound mind when he made the will because he was allegedly suffering from "hyponatremia, malnutrition, and cognitive impairment."
Significantly, the objectants did not submit an expert affirmation from a licensed physician opining on the meaning of the foregoing. That said, the undersigned is no position to construe the various medical terminology by going outside of the record.
The objectants further assert that the decedent was medically declining and that they had maintained a close relationship with the decedent since they lived with him for over 10 years until they were teenagers. Also, the objectants postulate that petitioner's relationship with the decedent was only amplified because she was his caretaker and based on her status as a registered nurse, since she was attending to the decedent shortly before his death.
Also, the objectants claim that petitioner exerted undue influence upon the decedent as his caretaker at the time because of her "motive and opportunity" and her late involvement in the decedent's life. The objectants posit that petitioner's presence during the decedent's "medical crisis" (sic) and exclusion of them from the will "suggest actual [undue] influence" on her part, thus raising triable issues of fact.
Further, the objectants also raise claims of fraud and "fraudulent execution" of the will. In this regard, the objectants contend that the due execution of the will is misleading, inasmuch as the decedent allegedly executed the will "during a medical emergency" when petitioner was present with him. According to the objectants, petitioner "potentially induc[ed]" the decedent into signing the will based on her false misrepresentations to him and given his alleged "cognitive impairment" at the time he executed the document, thus "suggest[ing] susceptibility" of the will. Lastly, the objectants surmise that Esther F. Glassberg's dual role as the attorney-drafter and a witness of the will "raises ethical concerns."
In reply, petitioner asserts that the objectants' documentary submissions annexed to their opposition and surreply papers — consisting mostly of various medical records, text messages, and travel records — were not submitted in admissible form; and therefore, should be disregarded by the Court (see CPLR 4518 [a]; see generally Matter of Neenan, 35 AD3d 475, 477 [2d Dept 2006]). Alternatively, petitioner argues that even if the Court were to consider such documents as purported evidence, their submissions do not raise a triable issue of fact with respect to any of their claims or objections.
In surreply, the objectants recycle much of the same arguments put forth in their opposition papers. They also assert that the will is "unstapled" and "disordered," thus "suggest[ing] haste or coercion" and "tampering concerns." All in all, the objectants press that the evidence on this motion raises several triable issues of fact; thus, the Court should outright deny petitioner's summary judgment motion. The Court disagrees with the objectants' premise, rejects their claims and arguments as a matter of law and fact; and accordingly, grants petitioner's summary judgment motion in its entirety.
C. The Decedent's Testamentary Capacity
"Whether to dismiss a party's objections and admit the challenged will to probate is a matter committed to the sound discretion of Surrogate's Court" (Matter of Dralle, 192 AD3d 1239, 1240 [3d Dept 2021] [internal quotation marks and citation omitted]). "While rare, summary judgment in a contested probate proceeding is appropriate where a petitioner establishes a prima facie case for probate and the objectant does not raise any factual issues regarding testamentary capacity, execution of the will, undue influence or fraud" (id.)
The Court first begins with the objectants' assailment of the decedent's testamentary capacity (or lack thereof) in or around July of 2022. To meet the initial burden, petitioner bears "the initial burden of establishing that the decedent understood the nature and consequences of making the will, the nature and extent of [his] property, and the natural objects of [his] bounty" (see Matter of Curtis, 130 AD3d 722 [2d Dept 2015], lv denied 27 NY3d 903 [2016]; Matter of Kumstar, 66 NY2d at 692; Matter of Dralle, 192 AD3d 1239, 1240 [3d Dept 2021]). 
Applying this legal framework here, the Court holds that petitioner, as the proponent of the will, met her initial burden of establishing that the decedent understood the nature and consequences of making the will, the nature and extent of his property, and the natural objects of his bounty (see Matter of Kumstar, 66 NY2d at 692; Matter of Sabatelli, 161 AD3d 872, 874 [2d Dept 2018]). In support of her motion, petitioner produced a copy of the 2022 will, the self-proving affidavit of Esther F. Glassberg and Bert Leonard Glassberg, and the affirmations of those two attesting witnesses (after death) to its execution. Although the self-proving affidavit of Glassbergs is not notarized, each of them affirm therein that the decedent was of sound mind, memory, and understanding, not under any restraint or in any respect incompetent to make a will, could read write, and converse, was not suffering from any defect of sight, hearing, or speech, and he was not physically or mentally impaired so as to affect his capacity to make a valid will.
The two subscribing witnesses attest to the decedent's sound mind, memory and understanding, thus creating "a presumption of testamentary capacity and prima facie evidence of the facts attested to" (id.). Moreover, petitioner additionally submits certain excerpts of the deposition transcripts of the objectants, which, based on their testimony, cast no doubt on the decedent's testamentary capacity.
Additionally, petitioner adduces an affirmation of Mrs. Glassberg — a witness, friend of the decedent, and the attorney-drafter [FN4]
— who states therein that she is "an attorney duly admitted to practice law in the State of New York," that she was a "close personal" friend of the decedent for approximately 35 years prior to his death, that the decedent "expressed an urgency" in making a will due to his declining health from lung cancer, and that the decedent asked her to prepare his will "as soon as possible." Mrs. Glassberg further states that while she does not "practice in the area of estate planning," she "was at that time[] familiar with the precepts of [*5]proper [w]ill preparation and execution" and also "aware of the requirements of EPTL 3-2.1."
Of note, Mrs. Glassberg states in her affirmation that the decedent possessed "all of his mental faculties at the time," that he "was of sound mind and memory," that he was "clear and articulate," and that he was "completely aware of the nature and extent of his property and the person who was the natural object of his bounty" when he executed the will. Mrs. Glassberg confirms that she has "absolutely no doubt about this," adding that she would not have "supervised the [will] execution" if she had concerns about the decedent's capacity to formalize a will.
Petitioner also proffers an affirmation of the other attesting witness, Bert Leonard Glassberg (Mrs. Glassberg's husband). Mr. Glassberg corroborates much of what is set forth and articulated in Mrs. Glassberg's affirmation. He, too, confirms that when the decedent executed the will, he had the requisite capacity since he was "certainly of sound mind and memory." In his affirmation, Mr. Glassberg states that the decedent possessed all of his mental faculties, and that he was coherent, lucid, and intelligible in what he was doing at the time when he made the will.
Based on the foregoing, the Court finds that petitioner met her burden of proving that the decedent possessed the necessary testamentary capacity at the time he made the will. Petitioner's submission of the will, the self-proving witness affidavit, and the affirmations of the Glassbergs, among other things, constitute prima facie evidence the facts attested to and create a presumption of testamentary capacity. The Court thus holds that petitioner met her initial burden demonstrating that the decedent possessed testamentary capacity when he executed the will (see Matter of Curtis, 130 AD3d at 722-723; Matter of Nofal, 35 AD3d 1132, 1134 [3d Dept 2006]; see also Zuckerman v City of New York, 49 NY2d 557, 562 [1980]).
Because such evidence is sufficient to entitle petitioner to summary judgment on this issue as a matter of law, the burden of raising a triable issue of fact shifts to the objectants. In opposition, the Court finds that the objectants fail to meet their burden of raising a question of fact regarding the decedent's testamentary capacity (see Matter of Curtis, 130 AD3d at 723).
With the burden shifting to the objectants, they fail to effectively raise a triable issue of fact in challenging the decedent's testamentary capacity. "A person's competency to engage in a transaction is presumed and the party challenging such bears the burden of proving incompetence" (Matter of Nealon, 57 AD3d 1325, 1327 [3d Dept 2008]). "[I]t must be demonstrated that the individual was incompetent at the specific time of the challenged transaction, i.e., he or she was so affected as to render him or her wholly and absolutely incompetent to comprehend and understand the nature of the transaction" (id. [internal brackets, quotation marks, and citations omitted]).[FN5]
 Furthermore, "[t]estamentary capacity need only be shown at the time the will was executed and physical weakness or senile dementia is not necessarily inconsistent with testamentary capacity" (Matter of Baldino, 230 AD3d 681, 682 [2d Dept 2024]; see Matter of Robbins, 206 AD3d 739, 740 [2d Dept 2022]).
In this case, there is no question that the objectants submit inadmissible medical records [*6]of the decedent.[FN6]
"[U]ncertified medical records are inadmissible evidence" (Matter of Robbins, 61 Misc 3d 1211[A], *3 [Sur Ct, Queens County 2018], affd 206 AD3d 739 [2d Dept 2022]; see Matter of Dralle, 192 AD3d at 1241). "[E]vidence relating to the condition of the [testator] before or after the execution is only significant insofar as it bears upon the strength or weakness of mind at the exact hour of the day of execution" (Matter of Hedges, 100 AD2d 586, 588 [2d Dept 1984], lv dismissed 63 NY2d 944 [1984]).
At most here, the uncertified medical records submitted by the objectants, made around the time of the will's execution, reflect that the decedent was of advanced age and was enduring physical infirmities and illnesses which, without more, are not inconsistent with testamentary capacity. In fact, the medical records from Danbury Hospital contain a form with a discharge summary, which was electronically signed by a physician and resident physician, reflecting that the decedent was admitted to the hospital on July 18, 2022, at approximately 3:48 p.m. The document states therein that the decedent "met criteria for initial discharge given atrial fibrillation with rapid ventricular response but had a rapid and unexpected recovery[,] and [he was] thus discharged within 24 hours of admission" (emphasis added). Those medical records, in effect, reflect that the decedent was briefly admitted to the hospital and discharged the next day on July 19, 2022.
Even assuming that the objectants could rely on the uncertified medical records of the decedent, any evidence of the decedent's purported "medical emergency," diagnosis of lung cancer, and any "declining cognitive abilities does not, without more, create a question of fact on the issue of testamentary capacity, as the appropriate inquiry is whether the decedent was lucid and rational at the time the will was signed" (Matter of Giaquinto, 164 AD3d 1527, 1529 [3d Dept 2018], affd 32 NY3d 1180 [2019]; accord Matter of Dralle, 192 AD3d at 1241). The Court does not construe the decedent's ailing health and brief admission to the hospital on the date that the will was made to mean that he was physically or mentally incapacitated, of unsound mind, and acting irrationally.
The objectants unsuccessfully attempt to poke holes in the Glassbergs' affirmations. The mere fact that the decedent was going through some medical complications during that time does not mean, in and of itself, that he did not have lucidity to form and express his final desires when he made and signed his will. The Court thus finds that the objectants' claim that the decedent lacked testamentary capacity is unavailing (see Matter of Nealon, 57 AD3d at 1327; Matter of Gifford, 28 AD3d 953, 955 [3d Dept 2006], lv dismissed and denied 7 NY3d 799 [2006]; compare Matter of Rita R., 26 AD3d 502, 503 [2d Dept 2006]).
To be sure, objectant Hana Berlin (the decedent's niece) conceded in her deposition testimony that she "can't say that [the decedent] wasn't of sound mind." She reiterated that "I don't know if [the decedent] was of sound mind or not sound mind," but it "seemed out of [*7]character he would leave stuff to [petitioner], given the nature of the relationship he described to me that they had." Hana Berlin's testimony in this regard sounds like sheer speculation and uncertainty.
Similarly, objectant Akio Berlin (the decedent's nephew) admitted in his deposition testimony that he "wouldn't know" if the decedent was of sound mind and memory and mentally capable of making a will. Akio Berlin testified that the decedent "seemed pretty sick, and in one of the medical documents[,] it says that he is not of sound mind." Though asked to produce such a purported medical document proving that the decedent was not of sound mind, the objectants failed to abide by petitioner's request. Moreover, Akio Berlin testified that it was "only just conjecture," when asked if he had any reason to believe that the decedent did not freely or voluntarily make or execute his will. Viewing the record in its totality, the objectants fail to generate a genuine issue of material fact that ought to be decided at trial in relation to the decedent's testamentary capacity.
The record shows that at that time when he made the will, the decedent, being 71 years old,[FN7]
was alert, coherent, and financially and mentally independent when he executed the will on July 18, 2022 (see Matter of Michels, 192 AD3d 1110, 1112 [2d Dept 2021]; Matter of Cianci, 165 AD3d 655, 657 [2d Dept 2018]; Matter of Zirinsky, 43 AD3d 946, 947-948 [2d Dept 2007], lv denied 9 NY3d 815 [2007]). Because the objectants have failed to meet their burden of raising a triable question of fact regarding the decedent's testamentary capacity, the Court dismisses that objection. Accordingly, the Court grants that branch of petitioner's motion for summary judgment dismissing the objection claiming that the decedent lacked testamentary capacity (see Matter of Schmidt, 194 AD3d at 725; Matter of Rottkamp, 95 AD3d 1338, 1339 [2d Dept 2012]; see also Matter of Dralle, 192 AD3d at 1241; Matter of Nofal, 35 AD3d at 1134).
D. Due Execution of the Will
Preliminary, the Court notes — as petitioner also points out — that the objectants did not raise or assert an objection or claim that the will should be invalidated on the ground of lack of due execution. Even if they did, such an objection would be denied and dismissed on the merits.
The proponent of a will bears the burden of proving that the propounded instrument was duly executed in accordance with the statutory requirements under EPTL 3-2.1. "In order for a will to be duly executed and attested in New York, the testator must sign the document at the end; the testator must sign or acknowledge the signature in the presence of the attesting witnesses; the testator must declare to each of the attesting witnesses that the instrument is his or her will; and there must be two attesting witnesses who shall, within 30 days, attest the testator's signature and, at the request of the testator, sign their names and affix their residence addresses. Before admitting a will to probate, Surrogate's Court must be satisfied that the will has been validly executed, that the mind of the testator accompanied the act, and that the instrument executed speaks his or her language and really expresses his or her will. The proponent of a will bears the burden of proving its validity by a preponderance of the evidence" (Matter of Walker, 124 AD3d 970, 971-972 [3d Dept 2015] [internal brackets, quotation marks, and citations omitted]; see EPTL 3-2.1 [a] [1] — [4]; SCPA 1408 [1]). "When an attorney drafts a will and [*8]supervises its execution, a presumption of regularity is raised that the will was properly executed" (Matter of Dralle, 192 AD3d at 1241-1242 [internal quotation marks and citations]).
Here, the Court holds that petitioner demonstrated her prima facie entitlement to judgment as a matter of law as to due execution through, among other things, submitting a copy of the will, which contains an executed attestation clause, the self-proving affidavit, and the affirmations of the attesting witnesses in support of the motion. The fact that the self-proving affidavit itself was not notarized by anyone and does not contain the witnesses' residential addresses is merely a procedural irregularity which does not affect the integrity of the execution itself (see e.g. Matter of Catalano, 40 Misc 3d 1224[A], 2013 NY Slip Op 51292[U], *1 [Sur Ct, Queens County 2013]).
As explained above, the will's execution was supervised by Mrs. Glassberg, an attorney — thus giving rise to an inference that the statutory requirements have been met. Coupled with the testimony of the two attesting witnesses regarding the execution ceremony, petitioner has made out a prima facie case for summary judgment on the issue of due execution.
Mrs. Glassberg states in her affirmation in support of the motion that she was "aware of the requirements of EPTL 3-2.1," that she visited the decedent's house to meet with him, where he "was very clear that he understood the purpose of a [w]ill," that he was "equally clear that he did not want any family members/next of kin to be beneficiaries under his [w]ill," and that he did not have "any faith in any of them to be [the] executor" of his estate when he passed. Mrs. Glassberg adds that the decedent informed him that he wanted to nominate petitioner as the executrix of his estate for several reasons. Those reasons were that: (i) he deemed her to be a "very dear friend . . . whom he considered to be like a daughter"; (ii) he "admired [petitioner's] honest nature and work ethic"; and (iii) he was "extremely appreciative of all the assistance she gave him in his time of need." Importantly, Mrs. Glassberg details the will execution ceremony in her affirmation, noting that she read the will out loud to the decedent along with the other attesting witness (Mr. Glassberg), that the decedent read the will himself, that he understood the nature of the document before he signed the will in their presence, and that the decedent said that the will "accurately expressed his desires."
The record belies the objectants' averment that petitioner was present with the Glassbergs when the will was made. Notably, Mrs. Glassberg makes clear in her affirmation that petitioner did not prepare the will, that petitioner did not make arrangements for Mrs. Glassberg or her husband to come and witness the will's execution, nor did petitioner "have any involvement" in discussing what the decedent desired in his will.
Similarly, Mr. Glassberg substantiates as much in his affirmation, confirming that he and his wife were the only witnesses to the will. He refers to the facts that are delineated in Mrs. Glassberg's affirmation. This is corroborated in petitioner's affirmation in support of her motion, wherein she vehemently denies that she was present at the will ceremony, stating that she was informed of the decedent's will "weeks after" it was made.
All things considered, the will and the annexed the self-proving affidavit, coupled with the affirmations of the Glassbergs, establish that the statutory formalities were properly followed, thus creating a presumption of due execution. Mrs. Glassberg, as the attorney-draftsperson and a witness to the will, explained that she followed a will execution ritual wherein she asked the decedent if he read the document, if he understood its terms, including to whom he would be leaving his property, if he was aware of the nature and extent of his property, and if he intended to make the document his will (see Matter of Schmidt, 194 AD3d at 724; Matter of [*9]Dralle, 192 AD3d at 1241).
In opposition to the prima facie showing, the objectants do not raise a triable issue of fact concerning due execution of the will. As petitioner correctly points out, Mrs. Glassberg, as an attorney, was the draftsperson of the will and supervised its execution — thus creating a presumption of regularity that the will was properly executed in all respects (see Matter of Nires, ___ AD3d ___, ___, 2025 NY Slip Op 04572, *1 [2d Dept 2025]; Matter of Schmidt, 194 AD3d at 724). Therefore, the Court grants that branch of petitioner's motion for summary judgment dismissing any purported objection as to due execution, to the extent that such a claim is raised by the objectants (see Matter of Schmidt, 194 AD3d at 724; Matter of Sabatelli, 161 AD3d at 873-874; Matter of Dralle, 192 AD3d at 1242).
E. Undue Influence and Duress
The Court also holds that petitioner is entitled to summary judgment dismissing the objections to probate alleging undue influence and duress. Petitioner demonstrated her prima facie entitlement to judgment, as a matter of law, dismissing those objections through unrefuted evidentiary submissions that the will was duly executed, that the decedent possessed the requisite testamentary capacity at the time he made and executed the will, and that the will was not the product of any duress or undue influence.
We begin with the applicable legal standard regarding a claim of undue influence. Prior precedent instructs that the party challenging the will bears the burden of establishing that a will is a product of undue influence (see Matter of Nurse, 160 AD3d 745, 748 [2d Dept 2018] ["(t)he burden of proving undue influence generally rests with the party asserting its existence"]; accord Matter of Albert, 137 AD3d 1266, 1268 [2d Dept 2016], lv denied 27 NY3d [2016]).
The Glassbergs and petitioner all represent in their respective affirmations that the decedent freely and voluntarily made the will on his accord. Petitioner also submits an affirmation in support of her summary judgment motion, wherein she details at length how she met and formed a relationship with the decedent. Petitioner states that she "knew [the decedent] for approximately fourteen (14) years prior to his demise," chronicling that she moved to the United States from Ghana when she was 17 years old, and that she initially formed a close relationship with decedent's sister-in-law and later "became friends" with the decedent and his wife.[FN8]
Petitioner explains in her affirmation that she "stayed in touch" with the decedent "by [tele]phone and an occasional visit," referring to him as her "uncle by adoption." Petitioner highlights that she considered the decedent as part of her family and as their relationship evolved, he became a father figure to her and treated her "like a daughter."
Furthermore, petitioner details in her affirmation that after the death of his wife, the decedent asked her to move into his home "so he could have companionship and assistance around the house," that she, in fact, moved into the decedent's home "in late July 2017" when he "offered [her] a place to live," and that she has lived at the decedent's residence since then. Petitioner describes in her affirmation that the decedent and her spent plenty of time together, that their "friendship never wavered," that they "were good companions to one another," and that they "would often go out to eat" and attend social functions together.
Moreover, petitioner, a registered nurse, states that she had no reason to believe that the decedent was suffering from cognitive decline or impairment since she "observed him to be sharp and focused, with full mental capacity, until the time of his demise." Petitioner also denies making any medical decisions concerning the decedent's treatment by stating that he alone "made all his medical decisions[,]including the decision to begin hospice care at [his] home." Similarly, petitioner rejects any notion that she exercised duress or undue influence upon the decedent by stating in her affirmation that he "was a fiercely independent, and often stubborn, individual who was not . . . susceptible to duress and fraud."
And of note, petitioner states that she only learned that the decedent made a will a few weeks after he did, specifying that she was made aware of its existence around "the first week of August 2022" — thus, being about a couple of "weeks after [he] had actually executed his [w]ill (on July 18, 2022)." Tellingly, petitioner maintains in her affirmation that she had nothing to do with the contents of the will, that she did not help prepare it any manner whatsoever, that she did not obtain the Glassbergs as the witnesses to the will, and that she did not arrange for its execution. This, too, was validated by Mrs. Glassberg.
Also of compelling significance, petitioner gives her account of the decedent's explanation as to why he specifically excluded his extended family members from the will. She represents in her affirmation that he did so because neither of the objectants visited him during the entire time she was living with the decedent and because the objectants "did not reach out to him via telephone or keep in touch in any way." Petitioner also notes that the objectants "did not even attend [the decedent's] funeral." Finally, petitioner states that the objectants "had virtually nothing to do with [the decedent], particularly [during] his time of need." The record here does not make out a case for undue influence by petitioner or any other person.
The objectants, who were deposed, offer no evidence to support their alleged claims of undue influence or duress. Their allegations are replete with speculation and conjecture. For example, objectant Akio Berlin states in a conclusory fashion in his affirmation that "[b]ased on the sudden and unexpected nature of this will, and the circumstances of [the decedent's] declining health and increasing isolation near the end of his life, I have serious concerns regarding his capacity and the possibility that undue influence played a role" (emphasis added).
In her affidavit, objectant Hana Berlin simply urges that she did have contact and communications with the decedent between 2017 to 2022. She documents the same with travel records and text messages exchanged between her and the decedent. The foregoing, however, is irrelevant and of no moment as it concerns the objectants' claim of undue influence allegedly exerted by petitioner upon the decedent.
What's more, objectant Akio Berlin testified in his deposition that he surmised that petitioner exerted undue influence upon the decedent since she benefited from the will, by summarily stating that "she's the one who is getting everything." He also testified that he "imagine[d]" that the decedent's ailing health may have probably made him more susceptible to undue influence. When asked if he had any "direct evidence" that petitioner employed undue influence upon the decedent, Akio Berlin answered "[o]utside of deduction, no." In addition, he was also asked if he had any "direct evidence" whether petitioner applied duress onto the decedent concerning the will — to which he responded "[n]o[,] I don't have any direct evidence of that."
"[U]ndue influence is established where the decedent was actually constrained to act against [his or] her own free will and desire, through proof identifying the motive, opportunity[,] [*10]and acts allegedly constituting the influence, as well as when and where such acts occurred. The influence asserted must rise to the level of a moral coercion and mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact" (Matter of Dralle, 192 AD3d at 1242-1243 [internal quotation marks and citations omitted]; see Matter of Sabatelli, 161 AD3d at 874-875).
"Undue influence can be shown by all the facts and circumstances surrounding the testator, the nature of the will, his or her family relations, the condition of his or her health and mind, his or her dependency upon and subjection to the control of the person supposed to have wielded the influences, the opportunity and disposition of the person to wield it, and the acts and declarations of such person. Although undue influence may be established through circumstantial evidence, such evidence must be of a substantial nature, and an inference of undue influence cannot be reasonably drawn from circumstances when they are not inconsistent with a contrary inference" (Matter of Bullock, 172 AD3d 853, 855 [2d Dept 2019] [internal brackets, quotation marks, and citations omitted]).
Moreover, "there is no requirement that a will explain the disinheritance of a family member" (Matter of Fiorentino, 65 Misc 3d 1236[A], 2019 NY Slip Op 52012[U], *3 [Sur Ct, Queens County 2019], affd 224 AD3d 685 [2d Dept 2024]). "[A] mere showing of opportunity and even of a motive to exercise undue influence does not constitute prima facie evidence of undue influence unless there is in addition evidence that such influence was actually utilized" (Matter of Haley, 189 AD3d 2000, 2003 [3d Dept 2020] [internal quotation marks and citation omitted]).
In opposition, the Court finds that the objectants fail to raise a triable issue of fact insofar as they did not adduce any proof that petitioner allegedly exercised duress or undue influence upon the decedent in relation to the will. The Court credits petitioner's argument that the objectants do not put forward any evidentiary proof that petitioner engaged in any conduct to unduly influence the decedent to dispose of his property in a manner inconsistent with his exact wishes. Although petitioner is not related to the decedent, the record reveals that the two had formed a close bond in the last years of the decedent's life. There is nothing in the record to suggest that she exerted undue influence or duress over him. In asserting a claim of undue influence on the part of petitioner, the objectants do not tender any evidence, beyond conclusory allegations and speculation, that she actually exerted pressure or force over him, or that she ever deliberately sought to threaten or intimidate the decedent about his testamentary disposition.
"Without a showing that undue influence was actually exerted, mere speculation as to motive and opportunity is insufficient" (Matter of Cianci, 165 AD3d at 658). Further, the record does not evince that petitioner provided 24-hour care to the decedent, who, as a result of his ailments, was rendered wholly reliant upon petitioner as his caregiver (compare Matter of Nurse, 160 AD3d at 748).
Again, "[u]ndue influence must be proved by evidence of a substantial nature, e.g., by evidence identifying the motive, opportunity[,] and acts allegedly constituting the influence, as well as when and where such acts occurred. Mere speculation and conclusory allegations, without specificity as to precisely where and when the influence was actually exerted, are insufficient to raise an issue of fact" (Matter of Alibrandi, 104 AD3d 1175, 1178 [4th Dept 2013] [internal ellipses, quotation marks, and citations omitted]). The objectants do not identify any conduct or acts by petitioner that may arguably constitute undue influence. In short, there has been no showing that petitioner, as the proponent of the will, actually exercised undue influence [*11]or duress with respect to the making of the will and the distribution of the decedent's assets. 
The evidence establishes that the decedent's relationship with petitioner had grown over the years preceding the decedent's death. Notably, petitioner was not even present when the decedent executed the will. The Glassbergs confirm that the decedent did not appear to be under any restraint or duress at the time. The objectants' attempt to show the actual exercise of undue influence and duress merely consists of bald, unsubstantiated allegations that are conclusory and conjectural in nature. The only argument made with regard to petitioner is that, as a registered nurse, she was the caretaker of the decedent during the last few years of his life. Even if true, such does not, in any event, rise to the level of undue influence or duress. The objectants' speculative assertions are insufficient to raise an issue of fact warranting a trial.
Even assuming, arguendo, that the objectants sufficiently identified a motive and opportunity for petitioner to exert undue influence upon the decedent, the Court finds that "'there is no direct evidence that petitioner did anything to actually influence [the] decedent's distribution of [his] assets'" (Matter of Alibrandi, 104 AD3d at 1178, quoting Matter of Walker, 80 AD3d 865, 868 [3d Dept 2011], lv denied 16 NY3d 711 [2011]). "Moreover, where, as here, the circumstantial evidence supports conflicting inferences, a conclusion of undue influence may not be drawn" (id.).
While the record indicates that petitioner may have had the opportunity to exert undue influence on the decedent, the objectants have not alleged sufficient facts which, even if credited, could prove that any undue influence was exerted. In this regard, petitioner established that she lacked a real motive to influence the decedent's testamentary decisions. Further, petitioner did not participate in the drafting of the decedent's will. Given her long and loving relationship with the decedent and the admitted lack of relationship between the decedent and the objectants (his niece and nephew), the disposition of his estate — as directed in his will — is rational. This Court must respect the wishes of the decedent-testator as he desired when he formalized his will — wishes that include disinheriting his extended family members from acquiring any part of his estate. 
In opposition, the objectants do not allege any credible facts which would demonstrate that the decedent's actions and decisions were not voluntary. There is no evidence in the record of any specific instance or act showing that petitioner employed undue influence or duress over the decedent. The objectants' claims that petitioner exerted any duress or undue influence over the decedent has no support in the record. Therefore, the Court dismisses the objections grounded upon duress and undue influence (see Matter of Richardson, 43 AD3d 1352, 1352-1353 [4th Dept 2007]; see also Matter of Fellows, 16 AD3d 995, 995-997 [3d Dept 2005]; Matter of Mallory, 29 AD2d 583, 583 [3d Dept 1967]).
F. Fraud
Finally, the Court turns to the objectants' claim of fraud, which, like undue influence — and in contrast to testamentary capacity — is their ultimate burden to prove (see Matter of Colverd, 52 AD3d 971, 973 [3d Dept 2008]). The Court holds that they failed to meet that burden; therefore, their objection predicated on fraud must also be dismissed.
Petitioner presses that there is nothing to support a claim of fraud in this case based upon the lack of factual allegations and the objectants' deposition testimonies, where neither of them state nor express that petitioner perpetrated any type of fraud upon the decedent. Petitioner [*12]further contends that her submissions on this motion evince that there was no fraud involved at any point — either in the course of petitioner's interactions with the decedent or in the execution of his will. The Court agrees.
"An objectant seeking to establish that a will is the product of fraud has the burden of proving by clear and convincing evidence that the proponent of the will knowingly made false statements to the testator to induce him or her to make a will which disposed of property in a manner different from that in which the testator would otherwise have disposed of the property" (Matter of Capuano, 93 AD3d 666, 668 [2d Dept 2012]; see Matter of Colverd, 52 AD3d 971, 973-974 [3d Dept 2008]; Matter of Paigo, 53 AD3d 836, 838 [3d Dept 2008]). "Absent specificity as to times, dates and places, conclusory allegations and speculation are insufficient to raise an issue of fact as to acts of . . . fraud" (Matter of Colverd, 52 AD3d at 973 [internal quotation marks and citations omitted]).
Other than sheer speculation here, the objectants present no evidence of a knowingly false statement made by petitioner to the decedent relative to the will at issue. The objectants fail to submit any evidence, other than conclusory allegations and conjecture, that any "fraudulent statements were made to the decedent to induce [him] to make a will disposing of [his] property in a manner contrary to that which [he] otherwise would have effected" (Matter of Robbins, 206 AD3d at 742).
Relatedly, objectant Akio Berlin avers in his affirmation that in 2017, the decedent directly contacted him "following a medical emergency involving an aneurysm . . . to ask for [his] current address so that he could update his will," adding further that "[t]his call reaffirmed our renewed relationship and his intent to include me in his estate planning." But in the very next paragraph, Akio Berlin readily admits that he "did not speak with [the decedent] again after mid-2020" because he "did not have an active cell phone due to AT&T discontinuing 3G support for [his] device." Yet notwithstanding, Akio Berlin confirms that he had not spoken with the decedent for several years.
Also, there is no record evidence that the decedent had previously made a will in or before 2017 or that he ever revoked a prior will. In fact, the self-proving affidavit annexed to the will provides that the decedent "confirmed that he has no previous wills existing at this time." And the top of the first page of the will states — in larger, bolded font — that the decedent is "hereby revoking all prior wills and codicils." Even with that said, it is not outside the realm of possibility that the decedent may have had a change of heart or mind in the later years of his life about his testamentary disposition, as he grew an affinity toward petitioner and their relationship grew.
Critically, objectant Akio Berlin testified at his deposition that he was unaware of any type of actual fraud perpetrated by anyone. When asked if he specifically knew of any type of fraud committed by petitioner or any other person in relation to the decedent's will, Akio Berlin testified "[n]ot directly, because I wasn't there, and I didn't hear about it, but going back to the previous answers I gave, just the will seemed hastily constructed, and seems like a very odd thing to do . . . so that's the only evidence that I would have."
Similarly, when asked during her deposition testimony if the will was procured by alleged fraud committed by petitioner and whether she had reason to believe that petitioner engaged in such conduct, objectant Hana Berlin simply responded: "I wouldn't accuse her of that" and "I'm not accusing her of that." During her deposition, Hana Berlin denied any knowledge as to the claim that the will was procured by fraud.
In the case at bar, petitioner's association with the decedent was mostly in a familial and friendly relationship and as a caretaker. She was not his lawyer, financial consultant, or his doctor. Although the decedent was undergoing treatment for lung cancer at the time of his death and suffering from some physical infirmities, the witnesses, who knew the decedent for many years and frequently interacted with him, established that he was alert, did not appear to be ill, and was his usual self when he executed the will bequeathing his entire estate to petitioner (see Matter of Capuano, 93 AD3d at 668).
For these reasons, the objectants failed to meet their burden to assert facts sufficient to establish fraud. Their submissions in opposition are based on allegations that are essentially conclusory, speculative, and unsupported by admissible evidence. Petitioner, therefore, is entitled to summary judgment dismissing the objection to probate based on fraud (see id.; Matter of Walker, 80 AD3d at 868).
III. Conclusion
In conclusion, petitioner's motion for summary judgment dismissing the objections to probate is granted in its entirety. Summary judgment is appropriate where, as here, petitioner establishes a prima facie case for probate and the objectants fail to raise a triable issue of fact concerning the validity of the will at issue. The uncontradicted and overwhelming proof in the record reveals that the decedent, at the time he executed the will, was rational and sound of mind, that his memory was clear, and that he was not the victim of fraud, duress, or undue influence by petitioner or another person.
The objectants fail to generate a triable issue of fact with respect to their claims of testamentary capacity, duress, undue influence, and fraud. Petitioner is entitled to summary judgment dismissing the objections to probate based on those claims. Therefore, their objections are denied and dismissed in their entirety, with prejudice (see Matter of Robbins, 206 AD3d at 741-742; Matter of Sundmacher, 192 AD3d 898, 898-900 [2d Dept 2021]; Matter of Zirinsky, 43 AD3d 946, 947-948; see also Matter of Neuman, 14 AD3d 567, 567-568 [2d Dept 2005]).
In light of the decision herein awarding petitioner summary judgment, the subject petition is granted. The decedent's will is admitted to probate. The Court issues a final decree herein in accordance with this decision and order and grants letters testamentary to petitioner. 
To the extent not specifically addressed herein, the parties' remaining contentions have been examined and are either rendered academic or without merit. Any other relief requested that is not squarely addressed herein is denied based on this decision. Accordingly, it is hereby:
Ordered that the motion of petitioner RAHAEL NAA NARKIE, made pursuant to CPLR 3212, for an order granting summary judgment dismissing the objections to probate of the last will and testament of the decedent, Eric S. Berlin a/k/a Eric Berlin, dated July 18, 2022; and to issue a final decree admitting the will to probate and granting letters testamentary to petitioner RAHAEL NAA NARKIE to be estate executrix, is GRANTED in its entirety; and it is further
Ordered that petitioner RAHAEL NAA NARKIE is awarded summary judgment dismissing all of the objections to probate; and it is further
Ordered that the underlying probate petition of petitioner RAHAEL NAA NARKIE is GRANTED; and it is further
Ordered that the written objections of the respondent-objectants Akio Berlin and Hana Berlin, dated March 10, 2023, are stricken, denied, and dismissed with prejudice, in their [*13]entirety; and it is further
Ordered and Decreed that the Last Will and Testament (dated July 18, 2022) of the decedent ERIC S. BERLIN a/k/a ERIC BERLIN be, and the same hereby is, admitted to probate, valid to pass real and personal property; and it is further
Ordered and Decreed that Letters Testamentary shall accordingly issue to petitioner RAHAEL NAA NARKIE, upon duly qualifying, as the executrix of the decedent's estate; and it is further
Ordered that the preliminary letters testamentary issued to petitioner shall be automatically revoked by operation of law upon the entry of this Final Decision, Order, & Decree; and it is further
Ordered that this probate proceeding is disposed in its entirety; and it is further
Ordered that petitioner shall cause a copy of this "Final Decision, Order, and Decree" to be served, with notice of entry, upon the Objectants within ten (10) calendar days from the date herein; and petitioner is further directed to file proof of such service on the NYSCEF system.[FN9]

Letters testamentary shall issue to petitioner RAHAEL NAA NARKIE by the Chief Clerk of the Court.
The foregoing constitutes the final Decision, Order, and Decree of this Court in this proceeding.
The court clerk is respectfully asked to also email a copy of this Final Decision, Order, and Decree to the parties below.
Dated: August 22, 2025
Carmel, New York
E N T E R:
HON. ANTHONY R. MOLÉ
SURROGATE

Footnotes

Footnote 1:The Court also takes judicial notice of all of the filings in this proceeding on the NYSCEF system (see generally Kazantzis v Cascade Funding RM1 Acquisitions Grantor Trust, 217 AD3d 410, 411 [1st Dept 2023]).

Footnote 2:Petitioner filed the Note of Issue on December 26, 2024.

Footnote 3:The objectants previously had two different attorneys during the course of this proceeding. Those attorneys both moved to withdraw as counsel at different stages of this proceeding. They were ultimately relieved from this case due to the objectants' failure to pay legal fees associated with their representation. 

Footnote 4:The Court notes that Mrs. Glassberg is a duly admitted attorney in this State. As a licensed attorney and an officer of the court, the Court credits the veracity of the factual statements set forth in her affirmation and the self-proving affidavit which she signed. Parenthetically, the Court verified information with the attorney online directory which reflects that Mrs. Glassberg has been an admitted attorney in New York State for over 20 years (see New York State Unified Court System, Attorney Online Services, Attorney Registration, https://iapps.courts.state.ny.us/attorneyservices/search [last accessed Aug. 21, 2025]).

Footnote 5:Parenthetically, even "a diagnosis of progressive dementia, standing alone, does not create a triable issue of fact as to mental capacity" (Matter of Nealon, 57 AD3d 1325, 1327 [3d Dept 2008]; see Matter of Friedman, 26 AD3d 723, 725 [3d Dept 2006], lv denied 7 NY3d 711 [2006]).

Footnote 6:The Court notes that "an inexperienced litigant who chooses to represent himself or herself in court does so with a degree of risk involved" (Sloninski v Weston, 232 AD2d 913, 914 [3d Dept 1996], lv denied 89 NY2d 809 [1997]; see generally Tiflinskiy v Bell, 25 Misc 3d 140[A], *1 [App Term, 2d Dept, 11th & 13th Jud Dists 2009]). "[A]lthough courts will routinely afford pro se litigants . . . some latitude, a litigant's decision to proceed without counsel does not confer any greater rights than those afforded to other litigants" (Mirzoeff v Nagar, 52 AD3d 789, 789 [2d Dept 2008] [internal quotation marks and citation omitted]).

Footnote 7:The decedent was born in 1951.

Footnote 8:The decedent's wife predeceased him in 2016.

Footnote 9:A proper written notice of entry should be made in accordance with the CPLR.